# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WATKINS, | Case No. 1:12-cv-01273 LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| S. DEATHRIAGE, et al., | [ECF No. 38] |
| Defendants. | OBJECTION DEADLINE: THIRTY DAYS |
| _____ / | |

## I. Background

Plaintiff James Watkins ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 6, 2012. This action is proceeding against Defendant E. Williams for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment, and against Defendants S. Deathriage and D. Runnels for retaliation in violation of the First Amendment.

On February 10, 2014, Defendants filed a motion for summary judgment. (ECF No. 38.) After obtaining extensions of time, on June 25, 2014, Plaintiff filed an opposition. (ECF No. 46.) Defendants filed a reply (ECF No. 47) on July 8, 2014, and their motion has been submitted upon the record without oral argument.[1] Local Rule 230(*l*). For the reasons set forth below, the Court

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

recommends that Defendants' motion be granted on the ground that Defendant Williams did not act with deliberate indifference against Plaintiff, and granted on the ground that Defendants Deathriage and Runnels did not retaliate against Plaintiff.

**II.     Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.  Plaintiff's Claim[2]

Plaintiff is incarcerated at Mule Creek State Prison in Ione, California.  He was incarcerated at Pleasant Valley State Prison ("PVSP"), Delano, at the time he filed his complaint which is where the events at issue occurred.

Plaintiff alleges as follows.  While housed at PVSP, Plaintiff was assigned to the Facility-A Third Watch Dining Hall Work Crew.  His duties included recycling trash in the recycling bins which are located in a designated area of the dining hall's loading dock, and are situated away from the low-hanging razor wire fence.  The recycling bins are not situated near the razor wire fence for both safety and security reasons.

On September 18, 2011, Defendant Williams ordered Plaintiff to report to work.  After Plaintiff reported to work, Defendant Williams ordered Plaintiff to load cardboard into the recycling bin on the loading dock.  When he reached the dock, Plaintiff immediately noticed that the bin was not in its usual location, but instead was up against the low-hanging razor wire fence. Plaintiff notified Defendant Williams that the bin was not where it was supposed to be.  Defendant Williams replied, "It doesn't matter where the bin is supposed to be.  Just load the damn thing." Defendant then unlocked the bin and ordered Plaintiff and another inmate to "get to work."

When Plaintiff looked inside the bin, he noticed that it was nearly full.  Defendant

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.

1 Williams then ordered Plaintiff to get inside the bin and crush down the cardboard in order to
2 make room for more.  As he was doing so, Plaintiff slipped on a piece of cardboard and fell face
3 forward into the razor wire, which sliced into his face and left eyelid and socket.  Plaintiff cut his
4 fingers as he removed the razor wire from his face.  Plaintiff then slipped again, toppling to the
5 ground.

6       The lacerations to Plaintiff's face and fingers were so severe that he had to be transported
7 to the emergency room at Coalinga Regional Medical Center.  He was returned to PVSP that day.

8       On September 19, 2011, Plaintiff reported back to work and asked Correctional
9 Supervising Cook J. Taylor to provide him with the necessary forms to apply for workers'
10 compensation.  Taylor replied that he did not have any.

11       On October 11, 2011, Plaintiff wrote the California Department of Industrial Relations,
12 Division of Workers' Compensation, in order to obtain the required forms.  The department
13 promptly sent the forms to Plaintiff, who then completed them and submitted them to Taylor.

14       On October 13, 2011, Plaintiff submitted an administrative appeal regarding the unsafe
15 work conditions that led to his injuries.  Among other things, Plaintiff requested workers'
16 compensation.

17       On or about October 18, 2011, Plaintiff spoke to Taylor requesting an update on the
18 previously submitted application for compensation.  Taylor replied that the application had been
19 misplaced.  He directed Plaintiff to resubmit the forms to someone else, and that he would not
20 accept any further forms from Plaintiff, despite having an obligation to do so.

21       On October 19, 2011, Plaintiff tried reporting to work.  When he reached the dining hall
22 door, Defendant Runnels refused to allow Plaintiff to enter, instead ordering him to return to his
23 housing unit.  When Plaintiff asked why he was not being allowed to work, Defendant Runnels
24 replied, "You like doing bullshit paperwork, so we're gonna keep that shit out of here."  Plaintiff
25 then explained to Defendant Runnels that he had to resubmit his workers' compensation papers to
26 Taylor, to which Runnels replied, "I don't care about that paperwork shit.  You're done here.  Do
27 that bullshit on your own time."

28       While Plaintiff was speaking with Defendant Runnels, Defendant Deathriage stood nearby

4

observing the verbal exchange. Plaintiff then spoke with Defendant Deathriage, asking that he order Runnels to allow Plaintiff to return to work, to which Deathriage replied, "You heard what the man said. When you push bullshit paperwork, you create problems for yourself and others. So take it back to your cell and stay the fuck out of my face. I don't wanna hear your bullshit sob story."

### IV.  Undisputed Facts[3]

1.  Plaintiff is a state inmate serving a sentence of 50 years to life for rape and robbery. Pl.'s Dep. 10:3-13.

2.  At all times relevant, Plaintiff was housed at Pleasant Valley State Prison in Delano, California. Pl.'s Compl. ¶ 3.

3.  From September 15, 2011, to November 29, 2011, Plaintiff was employed as a "linebacker" in the Facility-A Satellite Kitchen. Pl.'s Dep. 48:23-25; 49:11-15; Herrera Decl. ¶ 3; Runnels Decl. ¶ 2.

4.  Generally, the duties of a linebacker are to help serve meals and to clean up the dining area. Runnels Decl. ¶ 2.

5.  Plaintiff's scheduled work hours were 12:00 p.m. to 7:45 p.m. Herrera Decl. ¶ 3.

6.  Plaintiff's regular days off were Mondays and Tuesdays. Herrera Decl. ¶ 3.

7.  September 18, 2011, was Plaintiff's third day on the job. Pl.'s Dep. 51:10-22; Herrera Decl. ¶ 3.

8.  J. Taylor was Plaintiff's supervisor. Pl.'s Compl. ¶ 13.

9.  On September 18, 2011, Defendant Williams was the Culinary Officer assigned to the Facility-A Satellite Kitchen. Williams Decl. ¶ 2.

10.  Defendant Williams ordered inmate Ferguson to take out the trash and recyclable cardboard.[4] Williams followed Ferguson out to the back loading dock and unlocked the bins for

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[4] Plaintiff claims Defendant Williams ordered him to load the recycling bin as well. Defendant Williams states he directed Plaintiff not to help Ferguson, and that Ferguson was already taking care of it. Therefore, it is disputed

him.  Williams Decl. ¶ 2.

11.	Plaintiff then got into the recycling bin.[5]  Pl.'s Compl. ¶ 11; Williams Decl. ¶ 4.

12.	Plaintiff then slipped and fell and injured himself on razor wire which was located near the bin. Pl.'s Compl. ¶ 11; Williams Decl. ¶ 7.

13.	It did not occur to Defendant Williams that there was a substantial risk of serious harm to Plaintiff to be in the recycling bin because: a) Razor wire above the bin can be easily avoided; b) Defendant Williams was unaware of anyone being injured by razor wire while standing in the cardboard recycling bin; and c) Although it unsanitary for a food worker to be in the bins, Defendant Williams was not aware of any rule precluding inmates from standing in the cardboard recycling bin because of the risk of injury.  Williams Decl. ¶ 6; Jimenez Decl. ¶¶ 3-4, Ex. A-C.

14.	Plaintiff does not know if Defendant Williams knew there was a substantial risk of serious harm to Plaintiff.  Pl.'s Dep. 103:10-20.

15.	Plaintiff had not worked with Defendant Williams before or since September 18, 2011, and knows nothing about Defendant Williams' training or experience.  Pl.'s Dep. 73:23-74:12.

16.	Plaintiff has never heard of an inmate hurting himself in the same way. Pl.'s Dep. 84:7-9; 70:25-71:15.

17.	Immediately after Plaintiff was injured, Defendant Williams escorted Plaintiff to the Medical Technical Assistant's Office. Pl.'s Dep. 52:24; 103:17-20; Williams Decl. ¶ 7.

18.	Plaintiff was transported to Coalinga Regional General Hospital where he received four stitches.  Pl.'s Dep. 53:11-14.

19.	Plaintiff states he wrote to the Department of Industrial Relations, Division of Workers Compensation and requested a workers' compensation claim form.  Pl.'s Compl. ¶ 14.

20.	The workers' compensation claim form arrived in an envelope with a meter stamp date of

---

whether Williams was ordered to help load the bin, or if Plaintiff ignored Defendant Williams' statement not to help. Nevertheless, the fact is immaterial.

[5] Plaintiff states Defendant Williams ordered him to enter the bin to crush the cardboard down to make room for more. Defendant Williams states Plaintiff jumped into the bin on his own accord whereupon Defendant Williams ordered Plaintiff to immediately get down from the bin.  Defendant Williams states Plaintiff's efforts were unnecessary and it is unsanitary for kitchen workers to be in refuse and recycling bins. While the fact is disputed, it is not material to the decision.

6

1  October 17, 2011. Pl.'s Dep. 37:11-23, Ex. 6.

2  21.     Plaintiff alleges he completed the form and submitted it to Taylor.  Pl.'s Compl. ¶ 14.

3  22.     Plaintiff claims that on or about October 18, 2011, he asked Taylor about the status of his previously submitted application for compensation.  Taylor allegedly told Plaintiff the application had been misplaced and instructed Plaintiff to resubmit the form to someone else.  Pl.'s Compl. ¶ 16; Pl.'s Opp'n Aff. ¶ 5.

7  23.     October 18, 2011, was a Tuesday, which was a regular day off for Plaintiff.  Def.'s Request for Judicial Notice, Ex. A.

9  24.     The Work Supervisor's Time Logs show Plaintiff did not work on October 18, 2011. Pl.'s Dep. Ex. 12-B.

11 25.    On October 19, 2011, Plaintiff reported to work.  Pl.'s Compl. ¶ 18.

12 26.    On October 19, 2011, Plaintiff was counseled by J. Taylor and Defendant Runnels on the duties of a kitchen linebacker.  Defendant Runnels instructed Plaintiff to stay away from the ovens, and not to do anymore cooking.  Plaintiff stated: "Since I can't help with the cooking, I don't want to be here."  Plaintiff continued to argue with Defendant Runnels and then left the office in protest.  Runnels Decl. ¶ 5.

17 27.    For safety and security reasons, only assigned cooks with training and security clearance are allowed access to food preparation equipment.  Runnels Decl. ¶ 3.

19 28.    Parts of grills, baking sheets, panhandles and other food preparation equipment can be stolen by inmates and used to make weapons.  For example, a piece of a metal grill can be broken off and sharpened to make a shank. Runnels Decl. ¶ 3.

22 29.    For safety and security reasons, linebackers such as Plaintiff are not allowed access to food preparation equipment. Runnels Decl. ¶ 3.

24 30.    In October 2011, Plaintiff was telling other inmates that he was a cook, and was caught in the kitchen area attempting to assist with the cooking. Runnels Decl. ¶ 4.

26 31.    On another occasion, Defendant Runnels saw Plaintiff in the kitchen with a baking sheet. Runnels Decl. ¶ 4.

28 32.    On October 19, 2011, Defendant Runnels issued a Counseling Chrono (CDC 128-A)

1 verifying his counseling of Plaintiff. Runnels Decl. ¶ 6.

2 33. In the CDC 128-A, Defendant Runnels requested that a CDC 128-B Disciplinary Chrono
3 be generated to terminate Plaintiff from his work assignment. Runnels Decl. ¶ 6.

4 34. Pending the CDC 128-B, Plaintiff was temporarily relieved of his linebacker duties.
5 Runnels Decl. ¶ 7.

6 35. Defendant Runnels' request was denied and Plaintiff resumed work as a linebacker on
7 November 2, 2011. Runnels Decl. ¶ 7.

8 36. On November 6, 2011, in the Facility-A Dining Room, Plaintiff engaged in a verbal
9 altercation with Inmate Santistevan. A correctional officer ordered both inmates to stop, but they
10 refused, took their aprons off, and stepped towards each other in combative stances as both
11 inmates raised their fists preparing to fight. Herrera Decl. ¶ 4.

12 37. On November 26, 2011, Plaintiff was found guilty of behavior which might lead to force
13 or violence. He was assessed 30 days loss of yard and packages privileges, and he was counseled
14 and reprimanded regarding his conduct. Herrera Decl. ¶ 4.

15 38. Plaintiff was terminated as a linebacker on November 29, 2011, because he was found
16 guilty of behavior which might lead to force or violence. Herrera Decl. ¶ 4.

17 39. Defendant Deathriage signed Plaintiff's workers' compensation claim. Deathriage Decl. ¶¶
18 4-5.

19 40. Defendant Deathriage submitted it to the Return to Work Office on December 16, 2011.
20 Deathriage Decl. ¶¶ 4-5.

21 41. The State Compensation Insurance Fund accepted Plaintiff's workers' compensation claim
22 on December 28, 2011. Pl.'s Dep. Ex. 5-B at p.2.

23 42. On October 13, 2011, Plaintiff filled out an inmate appeal regarding the September 19,
24 2011, incident. Pl.'s Compl. ¶ 15.

25 43. Plaintiff's appeal was received by the appeals coordinator on October 26, 2011. Morgan
26 Decl. ¶ 5; Pl's Dep. 44:14-47:7; Pl.'s Dep. Ex. 10.

27 ///

28 ///

8

**V.     Discussion**

    **A.     Deliberate Indifference**

        1.     Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost, 152 F.3d at 1128. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take

reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Although the defendant's conduct need not have been undertaken for the very purpose of causing harm before it violates the constitution, a "sufficiently culpable state of mind" requires that the conduct involve more than mere negligence. Id. at 837, 847 (nothing less than recklessness in the criminal sense, that is, subjective disregard of a risk of harm of which the actor is actually aware, satisfies the "deliberate indifference" element of an Eighth Amendment claim).

2. <u>Analysis</u>

Plaintiff's claim against Defendant arises out of Plaintiff's fall while in the recycling bin outside the Facility-A Kitchen. It is undisputed that Plaintiff was in the recycling bin, and that he injured himself by coming into contact with razor wire while he was in the recycling bin. The parties dispute how Plaintiff came to be in the recycling bin. Plaintiff maintains that Defendant Williams ordered him into the bin. Defendant Williams maintains that Plaintiff entered on his own accord whereupon Defendant Williams ordered him to get out. Nevertheless, even assuming that Defendant Williams ordered Plaintiff to enter the recycling bin, Plaintiff cannot establish the objective or subjective components necessary for a deliberate indifference claim.

With respect to the objective component of an Eighth Amendment claim, Plaintiff fails to satisfy the "danger-plus" showing required to prevail. A prisoner must demonstrate there existed not only a threat to inmate safety from a particular dangerous condition, but also some additional condition exacerbating that threat. Morgan, 465 F.3d at 1045; Osolinski v. Kane, 92 F.3d 934, 938 ("No cases in this circuit clearly established that a single defective device, without any other conditions contributing to the threat to an inmates' safety, created an objectively insufficient humane condition violative of the Eighth Amendment"). In this case, Plaintiff alleges only that standing in the recycling bin with razor wire located above him was a dangerous condition. He does not put forth any evidence of some additional condition which exacerbated the threat of harm. In fact, Plaintiff does not dispute that "an inmate can easily stand in the recycle bin and avoid the razor wire." Defs.' Statement of Undisputed Facts No. 17; Pl.'s Opp'n, p. 6. Defendant

submitted photographs of the recycle bin and its proximity to the razor wire.[6] Plaintiff does not dispute the accuracy of the photographs. In his deposition, Plaintiff states that the recycle bin is still in the exact location it was when he was injured. Pl.'s Dep. 71:4-23. The photographs reveal that the razor wire is located at such a height as to be avoidable. Jimenez Decl. Exs. A-C. Plaintiff "has not pled any conditions which rendered him unable 'to provide for [his] own safety' in the sense that they precluded him from avoiding" the razor wire or rendered him unable to perceive its danger. Osolinski, 92 F.3d at 938.

Plaintiff also fails to raise a genuine issue of fact whether Defendant Williams knew of a substantial risk of harm but disregarded it. Defendant Williams states he did not think there was a substantial risk of serious harm for Plaintiff to be in the recycling bin. Williams Decl. ¶ 6. He states he did not foresee that Plaintiff would slip and fall and injure himself on the razor wire. Id. He states he was unaware of anyone being injured by razor wire while standing in the bin. Id. He states that although he knows it is unsanitary for a food worker to be in the bins, he was not aware of any rule that prevents inmates from standing in the bin because of risk of injury. Id. The photographs submitted by Defendants show that the razor wire was located high enough as to be avoidable. Plaintiff admits that he does not know whether Defendant Williams knew there was a substantial risk of serious harm to Plaintiff. Pl.'s Dep. 103:10-20. Plaintiff admits he knows nothing of Defendant Williams' training, and admits he has never heard of an inmate hurting himself in such a way. Pl.'s Dep. 73:23-74:12; 84:7-9; 70:25-71:15. Negligently ignoring a safety hazard falls short of the "deliberate indifference" required to establish a constitutional violation, unless the defendant's conduct exacerbated an existing danger in some manner. See, e.g., Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir.1985); Osolinski, 92 F.3d 934.

Plaintiff states he told Defendant Williams that the recycling bin was not located in its usual location. He states he told Defendant Williams that the "bin was not supposed to be up against the fence." Pl.'s Compl. ¶ 10. However, Plaintiff states he advised Defendant Williams of the bin's improper location *before* he was ordered to get into the bin. The position of the bin is not

---

[6] See Scott v. Harris, 550 U.S. 372, 380 (2007) (summary judgment granted to defendants when video evidence contradicted the plaintiff's version of the facts).

relevant to any risk of injury to Plaintiff if he was only directed to load it at that point. Plaintiff also states he voiced his concern about the bin before it was unlocked and opened, and he states he did not see that the bin was full until after it was unlocked and opened. Pl.'s Opp'n at 19. Therefore, Plaintiff could not have believed he was going to have to climb into the bin at the time he voiced his concern over the bin's placement. Accordingly, Plaintiff fails to establish that he pointed out a substantial danger but was nevertheless ordered to continue working so that he was compelled to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] him undue pain" in its performance. Morgan, 465 F.3d at 1045. He proffers no evidence from which a reasonable inference could be drawn that his slip and fall into razor wire was reasonably foreseeable, or that standing in the bin was unduly hazardous, or that Defendant Williams actually drew such an inference with the requisite deliberate indifference to inmate health or safety from that source so as to offend "the evolving stand[ards] of decencies that marks a contemporary society." Trop v. Dulles, 356 U.S. 86, 101 (1958). Accordingly, Defendant Williams is entitled to judgment in his favor as a matter of law on Plaintiff's Eighth Amendment claim.

**B.    Retaliation**

1.    Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). Prisoners have a protected right to file prison grievances, Watison,

668 F.3d at 1114; Brodheim, 584 F.3d at 1269, and the mere threat of harm can be sufficiently adverse to support a retaliation claim, Brodheim, 584 F.3d at 1270.

2. Analysis

Plaintiff complains that Defendants Runnels and Deathriage denied him access to work because he had filed an inmate appeal concerning unsafe work conditions and a workers' compensation claim.

Plaintiff's claim of retaliation fails because Plaintiff cannot establish that Defendants took adverse action against him "because of" protected conduct. Plaintiff alleges that Defendants barred him access to work because he had filed an inmate appeal and a workers' compensation claim. He relies on Defendant Runnels' statement that Plaintiff "like[s] doing bull shit paperwork so we're gonna keep that shit out of here." Pl.'s Opp'n Aff. ¶ 6. He further relies on Defendant Deathriage's statement, "I don't care about that paperwork shit. You're done in here do that bullshit on your own time." Pl.'s Opp'n Aff. ¶ 7. Plaintiff does not state that Defendants were aware that he had filed an inmate appeal or a workers compensation claim, only that they were aware he was endeavoring to create "paperwork." However, viewing the facts in the light most favorable to Plaintiff, even if the Court were to infer that Defendants were aware that the paperwork included the appeal and workers compensation claim, Plaintiff fails to establish that he was barred from access to work *because of* that paperwork.

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). Here, Plaintiff does not dispute that he was counseled on the date in question, October 19, 2011, by his supervisor Taylor and Defendant Runnels on his duties as a linebacker. Runnels Decl. ¶ 5. He does not dispute that he was instructed to stay away from the ovens and not do anymore cooking. Runnels Decl. ¶ 5. He does not dispute that he stated, "Since I can't help with the cooking, I don't want to be here," whereupon he abruptly left the office in protest. Runnels Decl. ¶ 5. Further, it is undisputed that he was issued a Counseling Chrono on October 19, 2011, documenting Defendant Runnels' interaction with Plaintiff. Runnels Decl. ¶ 6.

13

And, Plaintiff does not dispute that he was then temporarily relieved of his linebacker duties pending Defendant Runnels' request that a 128-B Disciplinary Chrono be generated. Runnels Decl. ¶ 7. Thus, Plaintiff does not dispute that he was barred from work on October 19, 2011, as a result of his violations of his duties as a linebacker. Therefore, Plaintiff cannot establish that, but for his protected conduct of filing an appeal and workers compensation claim, he would not have been barred from his work assignment.

In addition, Plaintiff cannot demonstrate that Defendants' actions did not serve to advance a legitimate correctional interest. In Pratt v. Rowland, the Ninth Circuit held that "a successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). In addition, the Ninth Circuit stated that the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Id. It is undisputed that linebackers are not allowed access to food preparation equipment for safety and security reasons, because parts of food preparation equipment can be stolen and made into weapons. Plaintiff does not dispute that he had told other inmates in October of 2011 that he was a cook, or that he was caught in the kitchen area attempting to assist in cooking. He further does not dispute that Defendant Runnels found him in possession of a baking sheet in the kitchen. As stated above, Plaintiff does not dispute that he was counseled on October 19, 2011, on his duties as a linebacker. He does not dispute that he left the office stating, "Since I can't help with the cooking, I don't want to be here." He also does not dispute that he was relieved of his duties in Facility-A as a result of his actions pending resolution of Defendant Runnels' request for a 128-B Disciplinary Chrono. Therefore, Plaintiff cannot show that Defendants' actions did not advance the legitimate correctional goals of safety and security of the institution.

In sum, Plaintiff cannot establish two elements of his retaliation claim: he cannot show that Defendants took adverse action against him "because of" his protected conduct, and he cannot show that Defendants' actions did not serve to advance a legitimate correctional goal. See

14

Rhodes, 408 F.3d at 567-68. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Accordingly, the Court recommends that summary judgment be entered in favor of Defendants Runnels and Deathriage on this claim.

### C. Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

As the Court has found that no constitutional violation has occurred, it need not further discuss the issue of qualified immunity.

## VI. Conclusion and Recommendation

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed on February 10, 2014, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within **ten (10) days** from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may

///

///

waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated: __**December 13, 2014**__             /s/ *Dennis L. Beck*
                                                        UNITED STATES MAGISTRATE JUDGE